CAMPBELL, APPELLEE, *v.* STEINBACHER, ADMR., ET AL.; GRANGE MUTUAL CASUALTY COMPANY, APPELLANT.

(No. 2-87-26—Decided June 27, 1988.)

*William E. Huber,* for appellee.
*Vorys, Sater, Seymour & Pease* and *Jonathan R. Vaughn,* for appellant.

MCBRIDE, J. This appeal by the

Grange Mutual Casualty Company (the "company" or "Grange Mutual") is from the judgment of the Court of Common Pleas of Auglaize County, which reversed the disallowance by the Unemployment Compensation Board of Review of the application of Rogers H. Campbell for unemployment compensation. Initially the claim was allowed on the basis of a discharge without just cause; however, after a hearing on reconsideration, the claim was denied on the basis of a discharge with just cause, and after another hearing this finding was affirmed by the board of review. The company seeks review of the reversal by the court of common pleas, which reinstated the original allowance of the claim on the basis of a discharge without just cause.

The single assignment of error is as follows:

"The trial court erred in reversing a factual determination of the Board of Review of the Ohio Bureau of Employment Services that appellee Campbell had been discharged for just cause from his employment with appellant Grange when said determination was lawful, reasonable and supported by credible evidence."

Other than the dispute over the mixed findings of law and fact by the board of review, it is difficult from the record in this case to find a conflict of fact in the evidence. The testimony is essentially undisputed, leaving a primary issue of law. Also, the question presented is not one of the power of managing officers to discharge an employee: the question is whether the discharge was with just cause as required by statute.

At the hearing on October 24, 1986 testimony was provided by J. Frederick Reid, chairman of the board, president and chief executive officer of Grange Mutual, and by Campbell, a claims adjuster employed by Grange Mutual at the Cincinnati branch office until his discharge. It was undisputed that Campbell held a policy with Grange Mutual and was entitled to the rights of a policyholder in the mutual company. R.C. 3941.07.

Early in 1986, the management of Grange Mutual experienced a proxy fight and a related lawsuit by other agents of the association. There is no evidence that Campbell was involved. However, it came to Reid's attention that Campbell was proposing a general plan called a "Representative Mutual Concept" for all mutual associations. The referee considered the plan itself irrelevant. The plan would allow agents of the company to represent other members for the purpose of casting votes at annual meetings. In short, the plan was another method for collecting proxies and as such was obviously not consistent with the wishes of existing management, represented by Reid. Learning that Campbell was working on and promoting his "Concept," Reid met with him on April 3, 1986 and directed him to meet with two other officers to explain his ideas, but directed him not to pursue the matter with others, specifically not with other policyholders, agents or the public.

At the annual meeting on May 22, 1986, we assume that management won the proxy contest since Reid continued to function in his several capacities. At the end of the annual meeting, Campbell moved that his "concept" be considered and adopted. He was ruled out of order. A reporter present at the meeting inquired about the plan and Campbell discussed it with him and gave him a copy of his plan. A story appeared in the Columbus Dispatch.

After the annual meeting, Campbell requested and was granted an authorized vacation. During the vacation, he contacted agents of Grange Mutual in other states as well as many other parties in an effort to advance

his "concept." When several agents advised Reid of these activities, Campbell was discharged without explanation on June 2, 1986.

A letter from Terry S. Haag, a vice president with whom Campbell was directed to discuss his "concept," alerted Campbell to the difference of opinions and continued:

"We believe our current Board of Directors, made up of twelve policy holders (members) elected by the policy holders, can and does represent the best interests of policy holders, agents, the public and company employees."

Nothing could better express the facts developed in the record that the company's actions related to a proposed new method for the selection of directors with which the directors and management disagreed. And for this Campbell was discharged after he had been ordered to discontinue his efforts.

Reid asserted that the disruption of operations by the prior proxy fight and litigation, along with adverse publicity, in none of which Campbell had any part, indicated that Campbell's "concept" was not in the best interest of the company. The record does not contain evidence of disruptions, adversity or injury suffered by the company as a result of either the proxy fight or Campbell's activities in support of his general proposal for the election of officers of mutual associations.

The only factual problem we find in the record relates to the requirement precluding unemployment benefits if a claimant "has been discharged for just cause *in connection with his work.*" R.C. 4141.29(D)(2)(a). The first referee found that Campbell's appearance and action at the annual meeting were proper acts as a policyholder, not in connection with his work, and did not justify a discharge. However, this referee also found that Campbell advocated his "concept," contrary to orders, during normal working hours and that this constituted insubordination.

Our conclusion supports that of the court of common pleas that there was no evidence that Campbell conducted activities in support of his "concept" on corporate time.

On further appeal, the board of review found Campbell "grossly insubordinate" in failing to obey the order of the officer, but the board also found, as a fact, that after the annual meeting, Campbell was on vacation, and that the activities complained of took place during that vacation. The record discloses no evidence that his activities took place while at work or during normal working hours. To the extent that the board of review found that such activities were conducted during normal working hours, that finding was unsupported and manifestly contrary to the evidence.

It is undisputed that Grange Mutual is a mutual insurance company. Those who obtain a policy are members of the association. Their premiums go into a common fund to pay obligations and losses and, as policyholders, members are entitled to participate in the selection of those who manage the operation. Each policyholder is an owner of the operation although few are aware of their rights and obligations.

The situation is much the same as in mutual savings and loan associations where in the "great depression" savers discovered to their dismay that they were not depositors, but stockholders required to accept the losses. As this case suggests, the lack of awareness of the policyholders as stockholders in the enterprise makes the solicitation of proxies difficult for all except those in management positions. Problems of control are not solved by the court; however, it is essential to understand that a proxy

fight or a plan for selection of officers does not involve the association itself and is a struggle among owners for the right to manage the affairs of the association.

In this case the contest is not with the Grange Mutual Casualty Insurance Company, but with the individuals chosen to represent and manage it. The only testimony of injury to the company is not factual: it is a purely speculative conclusion by the chief officer that an earlier proxy fight had been harmful to business and that Campbell's proposal to amend the bylaws would continue the proxy activity to the detriment of the company. In the absence of specific facts this conclusion cannot be supported. The detriment, if any, is the risk and effort shared by management personnel and not by policyholders or the company itself.

The right of management to discharge an employee is not questioned. The issue is whether a discharge under the circumstances in this case was for a just cause in connection with the employee's work within the intent of the unemployment compensation law. That Campbell's activities were not in the interests of managers individually may be granted, but that it was detrimental to the interests of the employer, Grange Mutual, was not established.

The company argues that whether Campbell's activities were in connection with his work is irrelevant, despite the statute that makes it so. The company cites *Grandowicz* v. *Bureau of Employment Services* (Ohio C.P. 1979), 10 CCH Unemp. Ins. Rptr. 38,548, ¶ 9300, to the effect that it would be a ridiculous standard of law to permit an employee to injure the business of the employer during the sixteen hours a day when he is not working. As indicated above, there is no evidence that Campbell sought to or did injure the business of Grange Mutual, his employer. If the statute is to be disregarded and an employee, who is a policyholder, required to pledge his twenty-four hour loyalty to the continuance in office of the existing management, there must be more evidence for ignoring the statute and the rights of the policyholder than was offered in this case.

Campbell was employed as a claims adjuster in a local office. There is no evidence of either his hours of employment or of any rules or regulations applicable to his conduct at work. The only evidence to support insubordination is his advocacy on his own time of his "concept" relating to proxies. The order of the chairman, president and chief executive to desist at all hours, in public or in private and at all places, was personal in nature and individually motivated. The unique uses of proxies by agents, as proposed in the "concept," was a question for the policyholders-owners of the company and not for executives who were charged with the duty to carry on regular business operations.

Campbell's argument that his discharge violated his constitutional right of free speech is not supported by *Giles* v. *Willis* (1981), 2 Ohio App. 3d 335, 2 OBR 380, 442 N.E. 2d 101. The discharge of Willis was not for just cause because his activities were protected under federal labor law. Thus a discharge for filing an unfair labor practice charge against an employer discouraged employees from exercising rights under federal law and frustrated a valid natural objective in violation of the Supremacy Clause. The *Willis* opinion refused to construe Ohio law so as to deny benefits to one exercising his federal rights.

Of concern in the instant case is the denial of statutory benefits to one exercising his contractual rights as a policyholder. The broad sweep of the order issued to Campbell was in denigration of his position as a holder of a

policy in a mutual insurance company and his right to participate as a member in pursuing what in his opinion was for the best interests of his association. To this extent, his discharge for no other valid reason was a breach of the right of contract and of ownership.

The line of distinction between a violation of supreme law and violation of a member's right of contract may be one of degree, but it is one that must be recognized in determining whether a discharge was for just cause. If it were otherwise, every employee who is a policyholder, or who invests in his own company should do so with caution for fear of reprisal and loss of employment. While such a violation may not necessarily rise to the chilling effect of a constitutional violation, it does have a detrimental influence upon Ohio law.

As expressed by the trial court:

"It is clear, in the instant case, that it would be unlawful for Grange Mutual Casualty Company to prohibit one of its shareholders from exercising legal rights that the shareholder has. Just because, coincidentally, this particular shareholder was an employee of the corporation, corporate management should not be able to wield the power of management over the employment contract of the Claimant and effectively deny Claimant his rights to free speech as a shareholder.

"Insubordination is just cause for termination, so long as the insubordination is connected to the work involved. * * *"

While we do not reach the freedom of speech issue, we agree that it is equally improper for the state to support efforts of management to silence shareholders who are also employees or to justify a statutory discharge for cause for reasons not connected with their work.

There is no merit to the argument of the company that the lower court adopted a position that an employee who is a policyholder is not bound by the general rules applicable to the conduct of his work. The possible culpability under work rules is not "irretrievably linked" to limited ownership. Such an issue may be possible, but not in this case where work rules and work performance were never introduced or made an issue. What was described as "insubordination" by the board of review was in response to an order that had no connection to the employee's work, was an isolated directive in the interest of the officers individually, and was not under the circumstances in this case a just cause for discharge.

The trial court properly concluded that Campbell was not discharged for just cause in connection with his work and that the suspension of his benefits was contrary to law.

The single assignment of error is overruled and the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.

McBRIDE, J., retired, of the Second Appellate District, sitting by assignment.